UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHENZHEN YIHONG TECHNOLOGY CO LTD., | CASE NO. 2:25-cv-02359-LK |
| Plaintiff, | ORDER DENYING MOTION TO DISQUALIFY GLACIER LAW |
| v. | |
| DBEST PRODUCTS, INC., | |
| Defendant. | |

This matter comes before the Court on Defendant dbest products Inc.'s Motion to Disqualify Glacier Law LLP. Dkt. No. 21. For the reasons stated below, the Court DENIES the motion.

## I.    BACKGROUND

On November 24, 2025, Plaintiff Shenzhen YiHong Technology Co. ("Shenzen YiHong")—represented by Ruoting Men of Glacier Law LLP ("Glacier")—sued dbest products, Inc. ("dbest"), represented by Ehab Samuel of Orbit IP LLP and William Fisher of Potomac Law Group, *see* Dkt. Nos. 5–7, under the Declaratory Judgment Act, seeking a declaration that

ORDER DENYING MOTION TO DISQUALIFY GLACIER LAW - 1

Shenzhen Yihong's "collapsible cart . . . do[es] not directly or indirectly infringe U.S. Patent No. 12,304,546 B1" ("the '546 Patent") and "No. 12,275,446 B2" ("the '446 Patent") "and/or that the '546 Patent and '446 Patent are invalid." Dkt. No. 1 at 1. On January 14, 2026, dbest filed an answer, along with counterclaims against Shenzhen YiHong. Dkt. No. 5. Benjamin Weed and Wei Wang of Glacier were subsequently admitted pro hac vice to represent Shenzhen YiHong—on March 3 and April 1, 2026 respectively. Dkt. Nos. 15–16, 19–20. Dandan Pan of Glacier receives electronic case filing notifications in this case. Dkt. No. 22-7 at 2. On May 29, 2026, dbest filed the present motion to disqualify Glacier, Dkt. No. 21, based on Glacier's prior representation of other clients in a series of disputes with dbest, as described below.

**A.    GYT Action**

From 2021 through 2024, Glacier—including attorney Wei Wang—represented Guangzhou Yucheng Trading Co. Ltd. ("GYT") in a suit against dbest in the United States District Court for the Central District of California (the "GYT action"). Dkt. No. 22 at 2. The GYT action involved a patent dispute over U.S. Patent No. 9,233,700 (the '700 Patent) and collapsible carts. *Id.* On November 23, 2021, the court entered a Stipulated Protective Order (the "GYT Protective Order"). *Id.*; *see also* Dkt. No. 22-1. The GYT Protective Order restricted Glacier from any use of "Protected Material"—that is, "any Disclosure or Discovery Material that is designated as 'CONFIDENTIAL' or 'HIGHLY CONFIDENTIAL'"—other than for "prosecuting, defending or attempting to settle" that case. Dkt. No. 22-1 at 6, 11. Pursuant to the GYT Protective Order, dbest's counsel "produced over 883 unique pages of documents to Glacier that were designated as 'CONFIDENTIAL' or 'HIGHLY CONFIDENTIAL,'" including "dbest's confidential technical infringement analyses, Amazon enforcement and takedown materials, settlement and license terms, sales and advertising data, profitability information, royalty and damages analyses, expert damages materials, and marketplace seller and sales-channel information." Dkt. No. 22 at 4. dbest

also avers that "[i]n addition to documents exchanged in the litigation, during court-led mediation, and settlement negotiations, dbest's counsel also made protected 'Disclosures' of information to Glacier." *Id.*[1] The confidentiality obligations of the GYT Protective Order "remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs." Dkt. No. 22-1 at 7.

**B.    Henan Actions**

In late 2024, dbest "complained to Amazon that products offered on Amazon . . . infringed dbest's U.S. Patent No. 12,103,576" (the "'576 Patent"). Dkt. No. 22 at 4–5. "Based on dbest's infringement reports, Amazon took down many sellers' listings for accused products." *Id.* at 5. On February 27, 2025, Henan Yiqi Technology Co., Ltd. and Luoyang Muzhou Department Store Sales Co., Ltd. (the "Henan parties")—represented by Glacier, including attorneys Ruoting Men and Dandan Pan—sued dbest in the United States District Court for the Western District of Washington (the "Washington Henan Action"), seeking "a declaration that Plaintiffs' Storage Bins . . . do not directly or indirectly infringe" the '576 patent. Dkt. No. 22-3 at 2; *see generally* Dkt. No. 22-3.[2] The Henan parties also asserted claims for tortious interference with contractual relations and unfair competition in violation of the Washington's Consumer Protection Act. Dkt. No. 22-3 at 2. On May 21, 2025, dbest sued the Henan parties—the plaintiffs in the Washington Henan Action—in the Central District of California, alleging infringement of the '446 and '546 patents ("California Henan Actions"). Dkt. Nos. 22-5, 22-6. According to dbest, "Glacier represented [the Henan parties] in this set of actions as well." Dkt. Nos. 22 at 5.[3]

---

[1] At trial, a jury and found in favor of dbest and the court issued a permanent injunction against GYT. *Id.*

[2] *See Henan Yiqi Technology Co Ltd et al v. Dbest Products Inc*, No. 2:25-cv-00370-GJL, Dkt. Nos. 14–16 (W.D. Wash. 2025) (pro hac vice application of Dandan Pan; order granting application; Ruoting Men notice of appearance).

[3] Glacier Law did not appear on behalf of the Henan parties in the California Henan Actions. *See Dbest Products, Inc. v. Henan Yiqi Tech Co., Ltd.*, 2:25-cv-04610-FLA-PVC (C.D. Cal. 2025); *DBEST Products, Inc. v. Luoyang Muzhou Department Store Sales Co., Ltd.*, 2:25-cv-04613-FLA-MAR (C.D. Cal. 2025).

ORDER DENYING MOTION TO DISQUALIFY GLACIER LAW - 3

Between July 19, 2025 and August 19, 2025, Samuel "negotiated the terms of a settlement agreement that would resolve all litigation between dbest and the Henan Parties" with Glacier. Dkt. No. 22 at 6. Samuel states that only a single Glacier attorney—Iris Ju—represented the Henan parties in the settlement negotiations. *Id.* According to Samuel, "[a]s part of the negotiation, [he] provided to Glacier dbest's confidential settlement positions, compromise communications, and strategic views concerning enforcement and resolution of disputes involving the same patent family and, in the California Henan Actions, the same '446 and '546 Patents now at issue." *Id.* "On August 21, 2025, the Henan Parties entered into a thirteen-page confidential settlement agreement with dbest and soon after voluntarily dismissed the Washington Henan Action and California Henan Actions with prejudice." *Id.*

## II.   DISCUSSION

According to dbest, the above facts demonstrate that Glacier had access to dbest's confidential information that "would materially assist Plaintiff in litigating or settling this dispute," Dkt. No. 21 at 16, so the Court should disqualify Glacier to "maintain integrity in these proceedings," *id.* at 18. Shenzhen Yihong vigorously disputes the motion, arguing that dbest lacks standing to seek disqualification of Glacier because "dbest concedes it was never Glacier's client, and it identifies no confidential or fiduciary relationship with Glacier of any kind," precluding standing. Dkt. No. 23 at 8–10.[4] Shenzen YiHong also contends that "everything dbest produced was discoverable material under an ordinary stipulated protective order, not a privileged communication or client confidence." Dkt. No. 23 at 5–6. Dbest responds that standing exists because Glacier's knowledge presents "a concrete risk that dbest's confidential information will be deployed against it in this litigation." Dkt. No. 24 at 3.

---

[4] Shenzhen YiHong cites only California law in support of its proposition that dbest lacks standing to pursue disqualification under Washington law. *Id.*

ORDER DENYING MOTION TO DISQUALIFY GLACIER LAW - 4

"[S]tanding is not dispensed in gross;" rather, standing must be established "for each claim that [plaintiffs] press and for each form of relief that they seek[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). In general, "courts do not disqualify an attorney on the grounds of conflict of interest unless *the former client* moves for disqualification." *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1156 (W.D. Wash. 2006) (quoting *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976)). "Although courts have occasionally recognized standing by non-client opposing parties when the conduct of the lawyers involved impacts the fundamental fairness of the proceedings, standing on that basis is the exception rather than the rule." Mark J. Fucile, *Disqualification: The 'Red Card' of Litigation Ethics*, Washington State Bar News (Sept. 7, 2022), https://wabarnews.org/2022/09/07/disqualification-the-red-card-of-litigation-ethics/. Exceptions include "where an 'unethical change of sides was manifest and glaring' or an ethical violation was 'open and obvious,' confronting the court with a 'plain duty to act.'" *FMC Techs.*, 420 F. Supp. 2d at 1156 (quoting *Yarn Processing*, 530 F.2d at 89). For example, in *Richards v. Jain*, the court entertained a motion to disqualify made by a non-client when the attorney at issue "had access to extensive privileged material for eleven months"; "reviewed almost a thousand privileged documents," including "a portion" of documents that were "relevant to the instant case"; and "did not adequately notify opposing counsel of its possession of the material." 168 F. Supp. 2d 1195, 1208–09 (W.D. Wash. 2001). Because the violations "threaten[ed] to affect the integrity of the adversarial process," and "shock[ed] the conscience of [the] Court," the Court found "grounds for disqualification," despite a non-client raising the issue. *Id.* at 1200–01. To determine whether this case involves the unique circumstance in which a non-client has standing to seek disqualification, the Court must evaluate the merits of the motion.

Attorneys practicing in this District must comply with the Washington Rules of Professional Conduct, LCR 83.3(a)(2), and Washington state law applies to the disqualification

issues here, *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) ("[W]e apply state law in determining matters of disqualification[.]"). Under Washington law, "[d]isqualification of counsel is a drastic remedy that exacts a harsh penalty from the parties as well as punishing counsel; therefore, it should be imposed only when absolutely necessary." *Matter of Firestorm 1991*, 916 P.2d 411, 416, 419 (Wash. 1996) (reversing the trial court's order of disqualification despite counsel "conducting an ex parte interview with an expert investigator hired by counsel for an opposing party" in violation of discovery rules because, in part, there was no "conflict[] of interest or breach[] of privilege"). And courts subject disqualification motions to "particularly strict judicial scrutiny" in part because they present the threat of tactical abuse. *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (citation modified).

dbest does not identify a Washington Rule of Professional Conduct ("RPC") that Glacier has violated. *See generally* Dkt. No. 21. Instead, dbest sweepingly suggests that disqualification is warranted "where counsel previously participated in substantially related matters or had access to confidential information material to the present suit." *Id.* at 12. In its description of the case law, dbest repeatedly and misleadingly uses the term "confidential" interchangeably with "privileged," but privilege (or quasi-privilege) is key, and confidential information is not necessarily privileged.[5] dbest cites to *Kurbitz v. Kurbitz*, a case in which the Washington Supreme Court disqualified an attorney whose law partner had represented the opposing party in a substantially related matter, observing that "if the attorney in the present litigation did not formerly represent the adverse client, but had [a]ccess to confidential information which is material to the present suit, then the attorney should disqualify himself." 468 P.2d 673, 676 (Wash. 1970).[6] The court reasoned that the "close

---

[5] The Court cautions dbest that further misrepresentations of case law or other authority will result in sanctions.

[6] In support of this proposition, the Washington Supreme Court cited *United States v. Trafficante*, 328 F.2d 117 (5th Cir. 1964) which involved a former IRS attorney attempting to represent someone whose taxes he handled when at

and intimate" relationship of law partners in which "[t]he everyday interchange of ideas and problems between legal associates may inadvertently release information which would have been otherwise kept confidential" necessitated the rule that an attorney not "accept employment against a former client of his law firm, especially when the subject matter of the former employment . . . is substantially related to the [current] matters[.]" *Id.* at 676. This principle is embodied in RPC 1.10(a), which prohibits lawyers in the same firm from "knowingly represent[ing] a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 [(duties of lawyers to current clients relating to conflicts of interest)] or 1.9 [(duties of lawyers to former clients relating to conflicts of interest)]," and in RPC 1.9, which prohibits (1) a lawyer "who has formerly represented a client in a matter" from thereafter representing another person in "a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing"; and (2) a lawyer whose former firm previously represented a client "whose interests are materially adverse to" a prospective client's interests and "about whom that lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter" from representing the prospective client "in the same or a substantially related matter" without informed written consent.

Neither *Kurbitz* nor the rules it represents are applicable here. Glacier and its attorneys have never had an attorney-client relationship with dbest, Dkt. No. 23 at 8, and any information revealed about dbest in prior litigation was not the result of "everyday interchange of ideas and problems between legal associates" that led to the "inadvertent[] release [of] information which would have been otherwise kept confidential" from non-clients, *Kurbitz*, 468 P.2d at 676. To the contrary, dbest's counsel intentionally provided information to non-clients represented by Glacier

---

the IRS. *Id.* at 120. The Fifth Circuit ordered the former IRS attorney disqualified because "[t]he handling by [the former IRS attorney] resulted in the assessment of a tax [against the client] which the United States [sought] to collect" and "[t]he assessment and the collection [were] in connection with the same claim." *Id.*

ORDER DENYING MOTION TO DISQUALIFY GLACIER LAW - 7

as part of litigation. *See* Dkt. No. 22 at 4 ("[M]y office produced over 883 unique pages of documents to Glacier . . . [t]hese documents included dbest's confidential technical infringement analyses[.]"). To the extent Glacier owes dbest confidentiality obligations, those do not stem from an attorney-client relationship or other duty that would make disqualification appropriate under *Kurbitz* or any related RPC.[7]

The remaining cases cited by dbest are also unpersuasive and largely relate to conflicts of interest arising from former attorney-client or otherwise privileged relationships. *See generally* Dkt. Nos. 21, 24. For example, in *Diva Limousine, Ltd. v. Uber Techs., Inc.*, a firm was disqualified when one of the plaintiff's attorneys "had worked with [the defendant] on litigation implicating the [same question underlying the suit] under a common interest agreement, pursuant to which he became privy to [defendant's] privileged and confidential information." No. 18-CV-05546-EMC, 2019 WL 144589, at *1 (N.D. Cal. Jan. 9, 2019). The common interest agreement gave rise to a duty from the attorney to the defendant that "constitute[d] [an] exception[] to the rule on waiver [of the attorney-client and work product privileges.]" *Id.* at *7 (citation modified). Unlike the defendant in *Diva Limousine*, dbest shared information with an opposing party represented by Glacier pursuant to a confidentiality agreement—and sometimes as part of settlement negotiations—not pursuant to a common interest agreement that established any privileged or quasi-privileged relationship between Glacier and dbest. Dkt. No. 22 at 4. While a common interest agreement can generate an attorney-client-like relationship and associated obligations, dbest has not established that the production of materials to opposing counsel pursuant to settlement

---

[7] dbest also cites *RWR Management, Inc. v. Citizens Realty Co.*, where a Washington Court of Appeals found no abuse of discretion when a trial judge disqualified a party's attorney due to a conflict of interest. 135 P.3d 955, 962–93 (2006). The Court of Appeals parroted the holding in *Kurbitz*, stating that if an attorney "did not formerly represent the adverse client, but had access to confidential information which is material to the present suit, then the attorney should disqualify himself." *Id.* at 963. However, the court did not purport to expand *Kurbitz*'s ruling to non-privileged information. *See generally id.*

ORDER DENYING MOTION TO DISQUALIFY GLACIER LAW - 8

negotiations or a confidentiality agreement (that does not establish any such relationship or obligations) can do the same. *Tradewinds Airlines, Inc. v. Soros*, No. 08 CIV. 5901 JFK, 2009 WL 1321695, at *7 (S.D.N.Y. May 12, 2009) (denying a motion to disqualify based on opposing attorney's prior exposure to settlement discussions with defendant and confidential information under a protective order in a prior case, where the protective order did "not restrict its signatories from engaging in future litigation that would involve overlapping discovery"); *Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 542 F. Supp. 2d 296, 315 (S.D.N.Y. 2008) ("[I]t is only access to *client* communications, which threatens the integrity of . . . litigation that warrants disqualification.") Additionally, "overly strict ethical rules" would "restrict the availability of legal services" because "[l]awyers and firms will be inclined to refuse to accept representation of smaller clients with matters that do not generate substantial fees for fear that they would be forced to reject more lucrative representation in the future." *United States ex rel. Lord Elec. Co., Inc. v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556, 1563 n.5 (W.D. Wash. 1986).

To the extent that dbest is concerned about Glacier's knowledge of purportedly "confidential information . . . materially assist[ing] a current adversary in evaluating, prosecuting, defending, or settling this case," Dkt. No. 21 at 15, that concern does not support disqualification. *First Impressions Design & Mgmt., Inc. v. All That Style Interiors, Inc.*, 122 F.Supp.2d 1352, 1354–55 (S.D. Fla. 2000) (finding "unconvincing" the argument that an attorney "has a tactical advantage in the litigation of the suit based on the knowledge gained in the prior suit" and declining to disqualify attorney when moving party did not "allege a conflict of interest between [the attorney] and a former client, or that [the attorney] had access to attorney-client privileged documents or work product information, allegations which if true, would strike at the heart of the attorney-client relationship, and in turn, create public distrust in the attorney-client relationship."). There is no suggestion that Glacier had exposure to any of dbest's privileged material—indeed,

ORDER DENYING MOTION TO DISQUALIFY GLACIER LAW - 9

Glacier received the materials as counsel to an *opposing party*. That Glacier may have a "head start" in requesting discovery due to its attorneys' "understanding the same materials in this case" from a prior litigation is not a sufficient basis for disqualification—doing so would have perverse consequences such as turning "any protective order barring future use of confidential information that is independently relevant and discoverable in a subsequent action into a restriction on an attorney's right to practice law," something dbest has not justified. *Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, No. 99 C 0762, 1999 WL 528545, at *2–3 (N.D. Ill. July 19, 1999) (concluding that "[t]he argument is unimpressive, but any merit it might have is far outweighed by the policy of avoiding unnecessary and unworkable restrictions on the practice of law").

Finally, Glacier's knowledge of the confidential settlement agreement that resolved the Washington and California Henan Actions does not justify disqualification. dbest does not aver that the settlement agreement contains a term "restrict[ing] [Glacier] from representing other clients against [dbest] in future cases arising from the same facts at issue," *Tradewinds*, 2009 WL 1321695, at *9,[8] or that dbest has reason to believe Glacier would violate its confidentiality obligations (if any) under the settlement agreement through its representation of Shenzhen YiHong in this matter, *see generally* Dkt. No. 21. If Glacier were to "breach [its] confidentiality obligations," dbest could pursue any "remedy specified in the Settlement Agreement," *Tradewinds*, 2009 WL 1321695, at *10, rather than seeking prophylactic relief from this Court, Dkt. No. 21 at 6.

### III.  CONCLUSION

For the foregoing reasons, the Court finds that dbest lacks standing to seek disqualification of Glacier. The motion is therefore DENIED. Dkt. No. 21. The Court notes that even if it found

---

[8] dbest repeatedly notes that "[a]ll settlement communications were labelled 'FRE 408.'" Dkt. No. 22 at 6; *see also* Dkt. No. 21 at 9. It is not clear what protection dbest believes this labeling provides it. Rule 408 address the admissibility of evidence related to settlement negotiations; it does not address confidentiality. Fed. R. Evid. 408.

ORDER DENYING MOTION TO DISQUALIFY GLACIER LAW - 10

standing, it would still deny the motion under Washington's standard for disqualification, *Matter of Firestorm 1991*, 916 P.2d at 416, because dbest has failed to demonstrate that disqualification is the appropriate remedy to any issues presented by Glacier's representation of Shenzhen YiHong in this case.

Dated this 6th day of August, 2026.

Lauren King
United States District Judge

ORDER DENYING MOTION TO DISQUALIFY GLACIER LAW - 11